IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRANCH BANKING & TRUST COMPANY, a banking organization organized and existing under and by virtue of laws of the State of North Carolina, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 10-00464-CB-M |
| GOODEN HOMES, INC., A&D INVESTMENTS, L.L.C., CHARLES DARRELL GOODEN and ALBERT J. CARNEY, | ) ) ) ) | |
| Defendants. | | |

**ORDER**

This matter is before the Court on a motion filed by Plaintiff Branch Banking & Trust Company to dismiss counterclaims asserted by Defendants A&D Investments, L.L.C. and Albert J. Carney. (Doc. 41.) Defendants have filed a response in opposition to the motion to dismiss.[1] (Doc. 54-1.) For reasons set forth below, the counterclaims are due to be dismissed because all causes of action asserted therein are precluded by Alabama's statute of frauds.[2]

---

[1] Defendants' motion for leave to file their response out of time (Doc. 54) is **granted**.

[2] The Court's decision on the motion to dismiss also resolves other pending motions. First, the Defendants' motions for leave to amend their answer and counterclaim (Docs. 46 & 47) are also **denied**. The proposed amendments make no substantive changes to the causes of action asserted in the original counterclaims. Consequently, amendment would be futile since the causes of action fail to state a claim. Second, after the briefing period had closed and the motion to dismiss was taken under submission, Plaintiff filed a motion to amend its brief to add *D'Oench* defenses. As grounds for the motion, Plaintiff noted that it could only assert thoses defenses with permission from the FDIC, which was only recently obtained. The motion to amend the brief (Doc. 63) is **denied.** The addition of those defenses would delay resolution of the motion to dismiss since Defendants have not had an opportunity to respond. Moreover, those
(Continued)

**Background[3]**

In this action, Plaintiff Branch Banking & Trust Company (BB&T), as successor in interest to Colonial Bank, seeks to recover on several promissory notes, including one executed by A&D Investments, L.L.C. (A&D) and guaranteed by Albert J. Carney and Charles Gooden. A&D is a "single-asset entity, formed for the purpose of constructing, operating and eventually selling all or portions of a recreational vehicle lot subdivision in Gulf Shores, Alabama." Countercl. ¶ 3. Carney and Gooden are majority owners of A&D. *Id.* ¶ 4. For more than 10 years, Gooden and Carney had a banking relationship with Colonial Bank and, in particular, Jim Howell, Vice President and Business Services Officer. *Id.* ¶ 5 Through various development entities, including A&D, Carney and Gooden had developed numerous projects financed through Colonial Bank, had borrowed over $15 million from the Bank and had always satisfied all loan requirements. *Id.* Colonial Bank was the primary bank for "Carney Gooden and the entities. . . even when other banks were routinely courting them for business." *Id.* Over time, Colonial was "putting pressure upon [the Defendants] to take more acquisition, development and construction loan business." *Id.*

In March 2006, A&D and Colonial entered into the loan agreement at issue here ("the Agreement") to fund the development of the Gulf Shores RV subdivision. *Id.* ¶ 7. The

---

defenses would not affect the outcome because Plaintiff's motion to dismiss is due to be granted in any event.

[3] The facts set forth below are taken directly from the Answer and Counterclaim (Doc. 29).

Agreement provided a closed-end line of credit of up to $5.1 million for 36 months. *Id.* ¶ 9. All parties to the Agreement knew that the development likely would take more than 36 months to complete. *Id.* at 8. In past dealings with Colonial on "almost all projects" Colonial had either refinanced the loan or extended the term of the loan "to accommodate the time required to finish the development of the project." However, in early 2009 Colonial Bank was acquired by BB&T. BB&T "stopped the process, ongoing for years, of automatic renewal of the Gooden/Carney entity development project loan renewals, causing the failure of the project." *Id* ¶¶ 13-15.

Based on these facts, A&D and Carney assert counterclaims for fraud and fraudulent suppression (Count I), negligence (Count II), breach of fiduciary duty (Count III) and promissory estoppel (Count IV). Each of these counts alleges, in some form or fashion, that Colonial Bank and its successor, BB&T, had an unwritten obligation to renew the loan pending the completion of the project. The fraud claim is based on "Colonial/BB&T['s] fail[ure] to advise, warn or disclose to [A&D and Carney] that it would be unable to continue with its policy and practice of renewal of the loans to accommodate the completion of the project." *Id*. ¶ 17. The breach of duty allegedly giving rise to the negligence counterclaim is failure "to advise and warn the borrower of . . . the potential for change in Bank renewal policy and procedure." *Id.* ¶ 21. Similarly, the breach of fiduciary duty alleged is the loan officer's failure "to advise and warn [ ] of the changed status of the Bank and the potential for change in Bank renewal policy and procedure." *Id.* ¶ 25. The promissory estoppel claim is somewhat vague. It asserts that "representations, promises and agreements of the Bank, made through the Bank officer. . . induced action and forbearance of a definite and substantial character by [A&D and Carney]." *Id.* ¶ 28. This claim does not specifically identify the "representations, promises or agreements"

3

that induced "action and forbearance." However, since it incorporates by reference all preceding allegations, it must necessarily rely on the Bank's alleged implicit promise to renew the loan.

**Legal Analysis**

A complaint or counterclaim must "set forth a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A claim for relief "must set forth enough factual matter (taken as true) to suggest [the required elements of a cause of action]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Watts v. Florida Int'l University*, 495 F.3d 1289, 1295 (11th Cir. 2007) (applying Twombly). A claim must be supported by facts, not "threadbare recitals of the elements of a cause of action," which state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009).

None of the counterclaims asserted states a claim for relief because each relies on an oral promise to delay the repayment of money—a type of agreement barred by Alabama's statute of frauds. Section 8-9-2 of the Alabama Code states:

> In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
> .   .   .
> (7) Every agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000[.]

The statute of frauds bars both breach of contract and tort claims based on oral agreements forbidden by the statute. *Holman v. Childersburg Bankcorporation, Inc.*, 852 So. 2d 691, 701 (Ala. 2002). "[W]here, as here, an element of a tort claim turns on the existence of an alleged agreement that cannot, consistent with the Statute of Frauds, be proved to support a breach-of-contract claim, the Statute of Frauds also bars proof of that agreement to support the tort claim." *Id.*

A&D and Carney do not dispute that each of the claims asserted in the counterclaim is based on an oral agreement to extend the loan. Instead, they argue that the statute of frauds is inapplicable to oral agreements to extend the time for payment of a mortgage. Although Defendants cite case law to support their point, they overlook one critical detail. Each of the Alabama cases cited was decided prior to the 1989 amendment of § 8-9-2 which added subsection (7). The stated purpose of amendment was "to provide that commitments or agreements to lend money or delay or forbear repayment thereof or modify the provisions thereof be in writing." Alabama Acts 1989, No. 89-430 p. 910. Consequently, Defendants entire argument is premised on a line of cases no longer applicable. *E.g. Roberson v. Faircloth*, 365 So. 2d 1224 (Ala. Civ. App. 1978); *Woolen v. Taylor*, 2 So.2d 43 (Ala. 1941). The counterclaims are clearly barred by the statute of frauds.

For the foregoing reasons, the Court finds that the counterclaim asserted by Defendants A&D Investments, L.L.C. and Albert Carney fails to state a claim upon which relief can be granted. Therefore, the motion to dismiss filed by BB&T is due to be and hereby is **GRANTED**.

**DONE** and **ORDERED** this the 4th day of April, 2011.

*s/Charles R. Butler, Jr.*
**Senior United States District Judge**